PEOPLE *v.* JAWORSKI

Opinion of the Court

1. Criminal Law — Plea of Guilty — Constitutional Rights — Waiver.

A defendant's plea of guilty waives his privilege against compulsory self-incrimination, his right to trial by jury and his right to confront his accusers.

2. Criminal Law—Plea of Guilty—Constitutional Rights—Express Waiver.

Express waivers of the right of trial by jury, the privilege against compulsory self-incrimination and the right to confront one's accusers are not necessary before a plea of guilty can be accepted; however, the record must show that the defendant voluntarily and understandingly entered the plea of guilty.

3. Criminal Law—Plea of Guilty—Voluntariness—Record.

A plea of guilty must be intelligent and voluntary to be valid; a Federal decisional rule has added only the requirement that the record must affirmatively disclose that the plea was voluntary and understandingly made.

4. Criminal Law—Plea of Guilty—Trial Strategy.

A plea of guilty can be given as part of a defendant's trial strategy; a plea of guilty so given is not, for that reason alone, unacceptable.

5. Criminal Law—Plea of Guilty—Voluntariness.

A plea of guilty of attempted breaking and entering was properly accepted even though the record did not show that the defendant waived his privilege against self-incrimination where the defendant was originally charged with breaking and entering, a crime carrying a maximum penalty twice as long as

---

References for Points in Headnotes

[1-5] 21 Am Jur 2d, Criminal Law § 484 *et seq.*
Plea of guilty or conviction as resulting in loss of privilege against self-incrimination as to crime in question. 9 ALR3d 990.

the charge to which he pled guilty, where the defendant, at the time he gave his plea, was represented by the same counsel who had represented him throughout the case, and where the record shows that the defendant waived his right to a trial by jury and his right to confront his accusers.

DISSENTING OPINION BY

LESINSKI, C. J.

6. CRIMINAL LAW—PLEA OF GUILTY—VALIDITY.

*A plea of guilty to be valid must be understandingly and voluntarily made.*

7. CRIMINAL LAW—PLEA OF GUILTY—UNDERSTANDING PLEA—CONSEQUENCES—CONSTITUTIONAL RIGHTS.

*A plea of guilty can be understandingly made only if the defendant has knowledge of the consequences of his plea; some of the consequences of a defendant's pleading guilty are that he waives his right to a trial by jury, his privilege against compulsory self-incrimination, and his right to confront his assusers.*

8. CRIMINAL LAW—PLEA OF GUILTY—UNDERSTANDING PLEA—RECORD.

*A defendant cannot knowingly waive his right to a trial by jury, his privilege against compulsory self-incrimination, and his right to confront his accusers unless he has knowledge of the existence of these rights; the record must reveal that the defendant knew of these constitutional rights before a plea of guilty can be regarded as understandingly given.*

9. CRIMINAL LAW—PLEA OF GUILTY—UNDERSTANDING PLEA—RECORD.

*The record must reveal that the defendant knew of his right to a trial by jury, his privilege against compulsory self-incrimination, and his right to confront his accusers before these rights can be regarded as waived by the defendant's plea of guilty; the record must show defendant's knowledge of his rights even if his plea of guilty was the result of negotiations with the prosecutor and not the product of coercion, terror, inducements, or subtle or blatant threats.*

10. CRIMINAL LAW—PLEA OF GUILTY—UNDERSTANDING PLEA—CONSTITUTIONAL RIGHTS.

*A plea of guilty was not voluntarily and understandingly made even though the record showed that the defendant waived his right to a trial by jury and his right to confront his*

*accusers where the record showed that the trial court did not advise the defendant of his privilege against compulsory self-incrimination.*

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 May 13, 1970, at Lansing. (Docket No. 8,729.) Decided July 29, 1970. Leave to appeal granted October 15, 1970. 384 Mich 766.

Paul Joseph Jaworski was convicted, on his plea of guilty, of attempted breaking and entering. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Douglas Chartrand,* for defendant on appeal.

Before: LESINSKI, C. J., and DANHOF and SNOW,* JJ.

DANHOF, J. The defendant was charged with breaking and entering contrary to MCLA § 750.110 (Stat Ann 1970 Cum Supp § 28.305). At his arraignment on August 14, 1969 the defendant, while represented by counsel, stood mute, and the court then entered a plea of not guilty, as required by statute, MCLA § 767.37 (Stat Ann 1954 Rev § 28.977).

On September 8, 1969 the people moved to add a second count of attempted breaking and entering, MCLA § 750.92 (Stat Ann 1962 Rev § 28.287). That motion was allowed and the defendant then pled guilty to the added count. On September 29, 1969

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the defendant was sentenced to a term of four to five years in prison.

The only question on appeal is whether the trial court complied with the constitutional requirements in accepting a plea as stated in the case of *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274).

The defendant argues that the *Boykin* decision requires on the record statements waiving (1) the privilege against compulsory self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. The record contains statements waiving the last two constitutional rights, but there is no statement specifically waiving the privilege against compulsory self-incrimination.

It is clear from the testimony at the time the guilty plea was taken,[1] and from the written plea of guilty

---

[1] Change of Plea

"*Mr. Boyer:* Your Honor, in this matter entitled CR 69–5297, People of the State of Michigan versus Paul Joseph Jaworski. Mr. Jaworski is charged with breaking and entering of a business establishment, that charge carrying a maximum penalty of ten years.
(*Defendant standing.*)

"*Mr. Boyer:* At this time the people would move to add a second count prior to proceeding with trial and that count being attempted breaking, attempting to break into a business establishment, carrying a five year maximum prison sentence, being contrary to Section 28.287.

"*Mr. Chartrand:* No objection to the addition of the second count, your Honor.

"*The Court:* It is so ordered.

"*Mr. Chartrand:* At this time we would waive the reading of the information on the second count, your Honor, and I have discussed this matter fully with the defendant and according to him it is his desire at this time to enter a plea of guilty as to the second count only.

"*The Court:* Your name is Paul Jaworski, J-a-w-o-r-s k i?

"*Defendant Jaworski:* Yes, sir.

"*The Court:* How old are you?

"*Defendant Jaworski:* 30.

"*The Court:* You have heard the statement of Mr. Chartrand, your attorney:

"*Defendant Jaworski:* Yes, sir.

"*The Court:* How do you plead to the added count?

"*Defendant Jaworski:* Guilty, your Honor.

signed both by defendant and his attorney,[2] that

"*The Court:* Do you understand fully what the added count is?

"*Defendant Jaworski:* Yes, sir.

"*The Court:* What do you understand the charge is, what does it charge you with?

"*Defendant Jaworski:* Attempting to break into a business.

"*The Court:* What did you do?

"*Defendant Jaworski:* Attempted to break into a store.

"*The Court:* Where was the store?

"*Defendant Jaworski:* Northwestern and Orchard Lake Road.

"*The Court:* Was this on the date charged?

"*Defendant Jaworski:* Yes, sir.

"*The Court:* Do you know that you are presumed innocent at this time, that that presumption will continue with you throughout a trial. That the prosecution has the burden of proof of your guilt beyond a reasonable doubt. That you must be confronted by witnesses, with the opportunity of cross examining them and that you are entitled to jury trial or trial by the court without a jury. Do you understand these things?

"*Defendant Jaworski:* Yes, sir.

"*The Court:* Do you knowingly and intentionally plead guilty as you have indicated, having in mind the consideration of these matters I have just mentioned?

*Defendant Jaworski:* Yes, sir.

"*The Court:* Have any threats, promises, or other inducements obtained this plea or is it voluntarily made?

"*Defendant Jaworski:* Voluntarily made.

"*The Court:* Have you been promised leniency or any particular consideration for your plea?

"*Defendant Jaworski:* No, sir.

"*The Court:* The plea is accepted. The matter is referred to the Probation Department for pre-sentence investigation, and the case will be continued to and sentence will be had on the 29th day of September, next, at nine o'clock.

"Is he incarcerated on failure of bond at the present time?

"*Mr. Boyer:* Yes, your Honor, he is.

"*The Court:* What is the bond?

"*Mr. Boyer:* Bond is $10,000, cash or security, and I show that it has not been furnished.

"*The Court:* He is held for other offenses, do you have his prior record?

"*Mr. Boyer:* Not to my knowledge, your Honor. He does have a prior record, but is not being held for anything.

"*The Court:* Very well. Bond may be continued. Anything further?

"*Mr. Chartrand:* Nothing further, your Honor.

"*The Court:* Very well."

[2] "Statement of respondent and his counsel and plea of guilty to the above court:

"I hereby tender to this court a plea of Guilty to Count II of the Information filed in this cause; namely, to the offense charged— Attempted Breaking into a Business Establishment

(describe concisely)

there was full compliance by the trial judge with the statutory and court rule requirements relative

---

and do hereby state and represent to the court as follows:

"1. I know, have read, understand, and have a copy of the heard read, information in this cause.

"2. I know and understand the elements of the offense, of which I am charged and which must be proved against me, are as follows:

"To wit, that:

(a) Did attempt to enter or break into a business establishment _____.

(b) with intent to commit a felony therein _____.

(c) _____.

(d) _____.

(e) _____.

"3. I know I am entitled to a trial by jury, or by the court, and that at such trial I will be presumed innocent until I have been proven guilty, and that my guilt must be established by the prosecution beyond a reasonable doubt.

"4. I have previously had full and adequate opportunity to converse and counsel with my lawyer and with such of my friends and relatives as I desire.

"5. I know and understand that on being found guilty, or on a plea of guilty being accepted and entered, this court may impose a sentence upon me of—

(a) probation for a period of years, or

(b) imprisonment in the S P S M (Jackson) for a minimum term of 1 years to a maximum term of 5 years, and

(c) that a fine in addition or in the alternative may be imposed in the maximum amount of $———.

"6. I plead guilty because I am guilty, and I do so voluntarily, freely, understandingly, and without promise of leniency, and without any undue influence, compulsion, duress, threat or constraint.

"Paul J. Jaworski (signed)
Respondent

"Dated Sept. 8, 1969

"I, attorney of record for said respondent, hereby certify that his foregoing statement is voluntarily made, and that I agree thereto and approve thereof.

"Douglas Chartrand (signed)
Attorney for Respondent
Business Address:
202 Pontiac Mall Off. Bldg.
Pontiac, Mich.

"Dated: Sept. 8, 1969"

to accepting pleas of guilty, CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058)[3] and GCR 1963, 785.3.[4] Recent decisions of the Michigan Supreme Court in *People* v. *Hobdy* (1968), 380 Mich 686, *People* v. *Dunn* (1968), 380 Mich 693, *People* v. *Stearns* (1968), 380 Mich 704, and *People* v. *Winegar* (1968), 380 Mich 719, settle the validity of the trial judge's acceptance of the defendant's plea unless, as argued,

[3] "Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

[4] "Arraignment and Sentencing. In every prosecution wherein the accused is charged with a felony, the trial court shall conform to the following practice:

(1) Arraignment. If the accused is not represented by counsel upon arraignment, before he is required to plead, the court shall advise the accused that he is entitled to a trial by jury and to have counsel, and that in case he is financially unable to provide counsel the court will, if accused so requests, appoint counsel for him. If the accused states he will procure counsel or requests that counsel be appointed, a reasonable time thereafter shall be allowed for counsel to consult with the accused before his plea shall be taken.

(2) Imposing Sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted.

(3) Record. The trial court shall cause a stenographic record to be made and promptly transcribed of the proceedings had under (1) and (2) above, and shall certify over his signature thereto that the same is a true record of the proceedings had. Thereupon the record so made shall be filed with the clerk of the court and become and be kept as a part of the record in the case. In any subsequent proceedings such record shall be competent evidence of the facts and circumstances therein recorded.

(4) This rule is mandatory but failure to comply therewith shall not be considered jurisdictional."

the later decision *in Boykin* v. *Alabama, supra,* requires additional interrogation by the trial judge.

This Court has previously held that *Boykin* does not apply retroactively. *People* v. *Taylor* (1970), 23 Mich App 595; *People* v. *Butler* (1970), 23 Mich App 643. We are now presented with a guilty plea entered approximately three months after *Boykin* was decided. We must determine what application, if any, *Boykin* has to Michigan criminal cases.

In *Boykin* a local grand jury returned five indictments against Boykin, a Negro, for common-law robbery—an offense punishable in Alabama by death. The court appointed counsel for the indigent defendant, and at the arraignment three days later, the defendant pleaded guilty to all five indictments. *So far as the record showed, the judge had not asked any questions of Boykin concerning his plea and the defendant did not address the court.* Justice Douglas, writing for the majority said, p 242:

"It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea *without an affirmative showing that it was intelligent and voluntary.*" (Emphasis added.)

After citing *Carnley* v. *Cochran* (1962), 369 US 506 (82 S Ct 884, 8 L Ed 2d 70), for the holding that " 'Presuming waiver from a silent record is impermissible,' " the Court stated, p 242:

"We think that the same standard must be applied to determining whether a guilty plea is *voluntarily* made." (Emphasis added.)

The *Boykin* opinion lists three Federal constitutional rights involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. They are the privilege against compulsory self-incrimination, the right to trial by jury, and the

right to confront one's accusers. The court then said, p 243:

"We cannot presume a waiver of these three important federal rights from a *silent* record." (Emphasis added.)

The concluding sentence of Justice Douglas' opinion reads, p 244:

"The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error 'because the record does not disclose that the defendant *voluntarily and understandingly* entered his pleas of guilty.' " (Emphasis added.)

*Boykin* is devoid of any specific language stating that in order to have a valid waiver of the three Federal constitutional rights involved when a plea of guilty is entered the three rights must be specifically enumerated and specifically waived. If the United States Supreme Court had intended such a holding, it would have been easy for the court to have so stated. Rather, the court emphasized the silent record[5] and thus the lack of any affirmative showing that the defendant voluntarily and understandingly entered his guilty plea.

We think the purpose of the enumeration in *Boykin* of the three Federal constitutional rights which are waived by the valid entry of a guilty plea was to explain why it is necessary to have a record which affirmatively shows that the defendant did voluntarily and understandingly enter his guilty plea. These three rights are so important that the United

---

[5] According to footnote 1 of the dissenting opinion in *Boykin*, p 245, the record of the plea-taking stated only that: "'This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person and with his attorney, Evan Austill, and the defendant in open court on this day being arraigned on the indictment in these cases charging him with the offense of robbery and plead guilty.' "

States Supreme Court would not presume from a silent record that ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats were not involved. *Boykin* v. *Alabama, supra,* pp 242, 243.

This construction of the *Boykin* decision is supported by the opinion of Michigan Chief Justice T. E. BRENNAN in *People v. Taylor* (1970), 383 Mich 338. He wrote pp 355, 356:

"The Court further enumerates the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers.

"The Court did not say, as some have suggested, that explicit and expressed waivers must be taken upon each of these constitutional rights before the plea can be accepted.

"The holding is more properly, that these rights are waived by the act of entering the guilty plea, and it is for this reason that a record must be made upon the question of voluntariness."

The Chief Justice continued his discussion of *Boykin* pp 356, 357:

"This understanding of the case is highlighted by the dissent. The Harlan opinion criticizes the majority on the ground that its holding '* * * fastens upon the states, as a matter of Federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure.'

"The dissent, in effect, accuses the majority of applying *McCarthy* v. *United States* (1969), 394 US 459 (89 S Ct 1166, 22 L Ed 2d 418) to the states retroactively, while applying it to the Federal courts prospectively only, *via Halliday* v. *United States* (1969), 394 US 831 (89 S Ct 1498, 23 L Ed 2d 16).

"The *McCarthy* decision held that a failure to comply with Federal Rule 11, by a failure to 'address the defendant personally' was reversible error.

"Mr. Chief Justice Warren, writing in *McCarthy,* directed attention to the 1966 amendment of Rule 11, which now provides:

" 'A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept *such* plea *or a plea of nolo contendere* without first *addressing the defendant personally and* determining that the plea is made voluntarily with understanding of the nature of the charge *and the consequence of the plea.* If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. *The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.* (As amended Feb. 28, 1966, eff July 1, 1966.)

"By footnote, the Chief Justice referred to the notes of the Advisory Committee on Criminal Rules, which were published in connection with the 1966 amendment. These notes are of particular interest to those of us who labor in the Michigan judicial vineyards. They say:

" 'For a similar requirement see Stat Ann § 28-.1058; Court Rule No 35A (1945); *In re Valle* (1961), 364 Mich 471 (110 NW2d 673); *People* v. *Barrows* (1959), 358 Mich 267 (99 NW2d 347); *People* v. *Bumpus* (1959), 355 Mich 374 (94 NW2d 854); *People* v. *Coates* (1953), 337 Mich 56 (59 NW2d 83).'

"No other state statutes, state court rules, or state court decisions are cited in the Committee notes attending the 1966 amendment of Federal Rule 11.

"In all modesty, we conclude that the 1966 amendment of Federal Rule 11 was designed to bring Federal court practice up to the standard of our Michigan practice; that the *McCarthy* case was in furtherance of that object and that the *Boykin* case, even when read through the piercing eyes of the dissent, merely stands for the proposition that our sister state of Alabama is being federally mandated to comply with long-standing Michigan practice.

"Under none of our Michigan holdings would *Boykin's* no-transcript, no-colloquy, no-advice plea have been held valid."

We agree with that analysis and interpretation of *Boykin.* However, since only Justice KELLY joined in signing the opinion, although Justices BLACK and DETHMERS did concur in reversal on the basis that *Boykin* was not to apply retroactively, we cannot cite the Chief Justice's opinion as controlling authority.

Additional enlightenment as to what *Boykin* held has been expressed in the recent case *Brady* v. *United States* (1970), 397 US 742 (90 S Ct 1463, 25 L Ed 2d 747). We think it supports the Chief Justice's interpretation of *Boykin.*

At issue in *Brady* was the question whether Brady's guilty plea to the offense of kidnaping was invalid because entered at a time when if he had exercised his constitutional right to a jury trial he faced a maximum penalty of death, if the jury should so recommend. Brady contended that on the authority of the *United States* v. *Jackson* (1968), 390 US 570 (88 S Ct 1209, 20 L Ed 2d 138) his plea was involuntarily made.

Justice White, writing for the court, said, p 747:

"Plainly, it seems to us, *Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. *Jackson* prohibits the imposition of the death penalty under § 1201 (a), but that decision neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both

'voluntary' and 'intelligent.' See *Boykin* v. *Alabama*, 395 US 238, 242 (1969)."[4]

Justice White continued p 748:

"That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized.   Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.   He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice.   But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge.   Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.[6]   On neither score was Brady's plea of guilty invalid."

Footnote 4 of the opinion reads:

"[4] The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized.   See nn. 5 and 6, *infra. The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily;* this Court has not yet passed on the question of the retroactivity of this new requirement."   (Emphasis added.)

Footnote 6 of the opinion states in part:

"Since an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney, this Court has scrutinized with special care pleas of guilty entered

by defendants who pleaded guilty without the assistance of counsel and without a valid waiver of the right to counsel. * * *

*"The importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of our recent decisions in McCarthy* v. *United States, supra, and Boykin* v. *Alabama, 395 US 238 (1969).* See nn. 3 and 4, *supra."* (Emphasis added.)

Later, Justice White writes, pp 749, 754, 755:

"The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it.

*      *      *

"Brady first pleaded not guilty; prior to changing his plea to guilty he was subjected to no threats or promises in face-to-face encounters with the authorities. He had competent counsel and full opportunity to assess the advantages and disadvantages of a trial as compared with those attending a plea of guilty; there was no hazard of an impulsive and improvident response to a seeming but unreal advantage. His plea of guilty was entered in open court and before a judge obviously sensitive to the requirements of the law with respect to guilty pleas.

*      *      *

"The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:

" '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by

promises that are by their nature improper as having no proper relationship to the prosecutor's business. (*e.g.* bribes).' "

Justice White continued, p 756, 758:

"The record before us also supports the conclusion that Brady's plea was intelligently made. He was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties; once his confederate had pleaded guilty and became available to testify, he chose to plead guilty, perhaps to ensure that he would face no more than life imprisonment or a term of years. Brady was aware of precisely what he was doing when he admitted that he had kidnaped the victim and had not released her unharmed.

\* \* \*

"We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crimes with which they are charged. In the case before us, nothing in the record impeaches Brady's plea or suggests that his admissions in open court were anything but the truth."

We think the *Brady* decision has made clear that *Boykin* did not hold that there must be on the record waivers of *each* of the enumerated Federal constitutional rights before a guilty plea can be accepted.

The court in *Boykin* did say, p 240:

"Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it."

In the case before us the record is not silent on trial strategy. Rather, it shows that defendant was originally charged with a crime the maximum penalty for which is ten years imprisonment. The record further shows that the defendant, while represented by the same counsel as has represented him throughout this case, including this appeal, stood mute at the arraignment. Later the defendant pled guilty to an added count, the maximum penalty for conviction under it being only five years imprisonment. This is a typical, non-silent record of plea bargaining which is a recognized form of trial strategy.

Thus, it is our opinion that the entry of the plea of guilty complied fully with all the requirements of the Michigan statutes and court rules and with all the Federal constitutional requirements.

Affirmed.

SNOW, J., concurred.

LESINSKI, C. J. (*dissenting*). On September 8, 1969, defendant Paul Joseph Jaworski was convicted, upon his plea of guilty, of attempted breaking and entering with intent to commit a felony or larceny, MCLA §§ 750.92, 750.110 (Stat Ann 1962 Rev § 28.287, Stat Ann 1970 Cum Supp § 28.305). Following sentencing, he appeals claiming that the plea was improperly accepted because the trial court failed to advise him of his right against compulsory self-incrimination under the Fifth Amendment to

the United States Constitution. The majority of this panel affirms this conviction upon a plea of guilty.

On June 2, 1969, at a time prior to this defendant's plea of guilty, the United States Supreme Court reversed a state court guilty plea in *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274), finding it impossible to determine, from the record before it, whether the guilty plea was voluntarily and understandingly given. Upon the authority of *Boykin,* applicable in the instant case, I find that the failure of the instant record to disclose that the trial court advised the defendant of his right against compulsory self-incrimination constitutes reversible error. See, also, *People* v. *Taylor* (1970), 383 Mich 338. (Concurring opinion of Justices Black and Dethmers; dissenting opinions of Justices Adams, T. G. Kavanagh and T. M. Kavanagh.)

The *requirement of an adequate record* was made clear by the *Boykin* Court's discussion of the standard of review applicable to guilty pleas:

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. See *Kercheval* v. *United States,* 274 US 220, 223 (47 S Ct 582, 583, 71 L Ed 1009, 1012). Admissibility of a confession must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.' *Jackson* v. *Denno,* 378 US 368, 387 (84 S Ct 1774, 1786, 12 L Ed 2d 908, 922). *The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation.* In *Carnley* v. *Cochran,* 369 US 506, 516 (82 S Ct 884, 890, 8 L Ed 2d 70, 77), we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: *'Presum-*

*ing waiver from a silent record is impermissible.
The record must show, or there must be an allegation
and evidence which show, that an accused was of-
fered counsel but intelligently and understandingly
rejected the offer. Anything less is not waiver.'*

"*We think that the same standard must be ap-
plied to determining whether a guilty plea is volun-
tarily made.* For, as we have said, a plea of guilty
is more than an admission of conduct; it is a convic-
tion. Ignorance, incomprehension, coercion, terror,
inducements, subtle or blatant threats might be a
perfect cover-up of unconstitutionality. *The ques-
tion of an effective waiver of a Federal constitutional
right in a proceeding is of course governed by fed-
eral standards. Douglas* v. *Alabama,* 380 US 415,
422 (85 S Ct 1074, 1078, 13 L Ed 2d 934, 938).

"*Several Federal constitutional rights are involved
in a waiver that takes place when a plea of guilty is
entered in a state criminal trial.* First, is the privi-
lege against compulsory self-incrimination guar-
anteed by the Fifth Amendment and applicable to the
States by reason of the Fourteenth. *Malloy* v.
*Hogan,* 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653).
*Second, is the right to trial by jury. Duncan* v. *Loui-
siana,* 391 US 145 (88 S Ct 1444, 20 L Ed 2d 491).
*Third, is the right to confront one's accusers.
Pointer* v. *Texas,* 380 US 400 (85 S Ct 1065, 13 L Ed
2d 923). *We cannot presume a waiver of these three
important Federal rights from a silent record.*" 395
US 238, 242, 243. (Emphasis supplied.)

The majority herein holds that *Boykin* stands for
the proposition that a *valid* plea of guilty waives the
three Federal constitutional rights specifically enu-
merated above. However, a guilty plea, *to be valid,*
must be "*understandingly and voluntarily made,*"
GCR 1963, 785.3(2); *Boykin, supra,* 395 US at 242,·
243. (Emphasis supplied.) In the constitutional
sense, a guilty plea cannot be "understandingly
made" unless the defendant has *knowledge* of the

consequences of his act. Since the majority agrees that one of the consequences of pleading guilty is to waive three important constitutional rights, it follows that the defendant must have knowledge of the existence of these rights to effectively waive them. See *Johnson* v. *Zerbst* (1938), 304 US 458, 464 (58 S Ct 1019, 82 L Ed 1461) (a valid waiver under the due process clause is "an intentional relinquishment or abandonment of a known right or privilege"). Contrary to the position of the majority, this, in my opinion, is what *Boykin* stated.

The majority argues that the case of *Brady* v. *United States* (1970), 397 US 742 (90 S Ct 1463, 25 L Ed 2d 747), supports their interpretation of *Boykin*. I disagree. The guilty plea in *Brady* was taken on April 30, 1959, over 10 years before the decision in *Boykin*. Further, the proceedings occurred in a Federal district court, before the 1966 amendment to Fed Rule Crim Proc 11 requiring that the district court advise defendant of the consequences of the plea and question him personally. *McCarthy* v. *United States* (1969), 394 US 459 (89 S Ct 1168, 22 L Ed 2d 418). Since both *McCarthy* and *Boykin* are to be applied prospectively only, *Halliday* v. *United States* (1969), 394 US 831 (89 S Ct 1498, 23 L Ed 2d 16); *People* v. *Taylor* (1970), 23 Mich App 595; *People* v. *Butler* (1970), 23 Mich App 643, it follows that any discussion in *Brady* of the meaning of *McCarthy* and *Boykin* is mere *obiter dictum*.

Further, my review of the 1959 transcript of Robert M. Brady's guilty plea convinces me that "under none of our Michigan holdings" would Brady's plea "have been held valid." See *People* v. *Taylor* (1970), 383 Mich 338, 357 (*per* Brennan, C. J.).

The problem, therefore, becomes one of determining whether the defendant possessed the requisite

knowledge. The majority appears to believe that "knowledge" can be inferred from the mere fact that the defendant pled guilty "voluntarily". I disagree. Even assuming that the proffered plea is the result of negotiation with the prosecutor and not the product of "coercion, terror, inducements, or subtle or blatant threats", the record *must still reveal* that the defendant *knew* of the specific constitutional rights sought to be treated as waived, *i.e.* that the plea is not the product of "ignorance [or] uncomprehension". A constitutional right cannot be waived inferentially. *Boykin* v. *Alabama, supra,* 395 US at 243. See, also, *McCarthy* v. *United States, supra,* and *Johnson* v. *Zerbst, supra.*

Those who are hesitant to upset guilty pleas when the record fails to reveal a "knowledgeable" waiver, take haven in the specific difficult facts of *Boykin,* where the defendant, a Negro, was sentenced to death for common-law robbery and where only a *bare journal entry* recorded the guilty plea.

While it may be true that the harsh facts of *Boykin* moved the Supreme Court to the strong pronouncement made in that opinion we cannot allow legal pedantry to limit the application of the *Boykin* rule. If we did, then the universal effect of other "harsh" cases would also be in doubt. See, for example, *In re Gault* (1967), 387 US 1 (87 S Ct 1428, 18 L Ed 2d 527), *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977), and *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694). Additional citation of authority is unnecessary to demonstrate the error of such a position. The *"Boykin* rule" is as much a part of our jurisprudence as the *"Miranda* rule" or the *"Escobedo* rule".

It is unfortunate that the import of *Boykin* did not make the impact on the judiciary and the bar of this state that *Escobedo, Miranda* and *Gault* did. Un-

doubtedly this will ultimately adversely affect the validity of many pleas of guilty taken after *Boykin*. However, the sooner we recognize the significance of *Boykin*, the sooner we can eliminate the shortcomings in those cases, such as the instant one where the plea taking was exemplary except that *Boykin* was not followed, and concentrate on preventing any confusion in future cases.

One other point needs mention. The appellate reports of this state are replete with cases arising after defendants were granted a right of appeal by our 1963 Constitution questioning the guilty plea taking procedures. Some of the opinions in these cases would appear to be attempts to lay to rest once and for all the issue of what constitutes a valid plea of guilty. I believe that all of the confusion and needless writing in this area could be avoided if trial courts would spend just a few minutes more in the taking of a plea of guilty.

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought (*Garner* v. *Louisiana*, 368 US 157, 173 [82 S Ct 248, 256, 7 L Ed 2d 207, 219]; *Specht* v. *Patterson*, 386 US 605, 610 [87 S Ct 1209, 1212, 18 L Ed 2d 326, 330]), and forestalls the spin-off of collateral proceedings that seek to probe murky memories." *Boykin* v. *Alabama, supra,* at 243, 244.

This is a small request to make of the judicial system where the effect of a *valid guilty plea* is to save the trial courts many days of trial and expense and expose defendants to possible long-term imprisonment, and the effect of an *invalid plea* is to place a

great burden on appellate courts and make convictions, after reversal, more difficult to obtain due to passage of time and disappearance of witnesses.

The plea in the instant case should thus be set aside and the case remanded to the trial court for a new trial. In so recommending I reiterate the exemplary nature of the plea procedure in this case except for the failure to follow the *Boykin* rule set down just prior to this plea.