HOLT v STATE BAR GRIEVANCE BOARD

DECISION OF THE COURT

1. ATTORNEY AND CLIENT—STATE BAR GRIEVANCE BOARD—DISMISSAL OF COMPLAINT—REMAND.

Order of the State Bar Grievance Board dismissing complaint against an attorney is vacated and remanded to the State Bar Grievance Board for further proceedings.

OPINION FOR REVERSAL

T. M. KAVANAGH, C. J., and SWAINSON and WILLIAMS, JJ.

2. CRIMINAL LAW—PLEA OF GUILTY—JURY TRIAL—SELF-INCRIMINATION—WITNESSES—CROSS-EXAMINATION—APPEAL AND ERROR.

*Defendant's plea of guilty was improperly accepted, where the trial judge informed the defendant of his right to a trial by the court or by jury but failed to advise him of his right against self-incrimination and of his right to question witnesses against him; a deficiency of this nature in the plea-taking procedure constitutes reversible error.*

3. ATTORNEY AND CLIENT—CRIMINAL LAW—INDIGENTS—PROFESSIONAL MISCONDUCT—CODE OF PROFESSIONAL RESPONSIBILITY AND CANONS.

*A lawyer's duty to his client in a criminal case is judged by the same standard regardless of the fact that his client may be indigent and professional misconduct by an attorney will not be condoned due to the fact that the attorney's client was in an impoverished condition; the application of Michigan's Code of Professional Responsibility and Canons is not dependent upon the size of the retainer which an attorney receives.*

4. ATTORNEY AND CLIENT—INCOMPETENCY—NEGLIGENCE—PROFESSIONAL MISCONDUCT.

*An attorney, if incompetent to handle a particular case, is guilty*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–9] 7 Am Jur 2d, Attorneys at Law § 12 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 484 *et seq.*

*of professional misconduct if he nevertheless undertakes to represent a client in that case; though an attorney may be competent to accept the assignment of a case, the manner in which he conducts the case may be so inadequate or misguided so as to constitute negligence on his part.*

5. ATTORNEY AND CLIENT—STATE BAR GRIEVANCE BOARD—REMAND.

*State Bar Grievance Board's cavalier treatment of a case in which an indigent defendant in a criminal case complained about the representation given him by a court-appointed attorney, in and of itself, requires remand to the Board for further consideration where the Board disposed of the case with a superficial investigation, the indigent alleged that the guilty plea transcript evidenced errors in the manner in which his plea was accepted, yet the Grievance Board failed to even examine that transcript, and the indigent alleged that the attorney failed to answer certain letters, yet the Board failed to even read those letters.*

6. ATTORNEY AND CLIENT—PROFESSIONAL MISCONDUCT—INCOMPETENCY —NEGLIGENCE—STATE BAR GRIEVANCE BOARD.

*Question of whether or not an attorney's course of action in a criminal case constituted either incompetency or such negligence as to reach professional misconduct is one which must be considered in a complete hearing of the case by the State Bar Grievance Board.*

7. APPEAL AND ERROR—ATTORNEY AND CLIENT—STATE BAR GRIEVANCE BOARD.

*Appeals from an administrative dismissal by the State Bar Grievance Board of a complaint against an attorney should come before the Michigan Supreme Court in the form of applications for leave to appeal with the Grievance Board as the named appellee.*

OPINION CONCURRING IN RESULT .

ADAMS and T. G. KAVANAGH, JJ

8. ATTORNEY AND CLIENT—NEGLIGENCE—PROFESSIONAL MISCONDUCT— STATE BAR GRIEVANCE BOARD.

*State Bar Grievance Board should deliberately determine whether an attorney was guilty of negligence amounting to professional misconduct in his representation of an indigent defendant as assigned counsel in a criminal case where that Board dismissed the indigent's Request for Investigation.*

9. Attorney and Client—Negligence.

> *A lawyer is not guilty of negligence because he did not have* pre *knowledge of a coming decision of the Michigan Supreme Court.*

Appeal from State Bar Grievance Board. Submitted April 4, 1972. (No. 4 April Term 1972, Docket No. 53,693.) Decided July 26, 1972.

Appeal by Kenneth L. Holt from an order of the State Bar Grievance Board dismissing a complaint against an attorney. Dismissal vacated and remanded to State Bar Grievance Board.

Kenneth L. Holt, *in propria persona.*

*Louis Rosenzweig,* for defendant.

Williams, J. *(for reversal).* This case involves three problems of considerable importance and impact on the administration of justice in this state. The first problem, as appears chronologically, is the proper taking of a guilty plea, illustrating once again the necessity for a lucid and comprehensive court rule, and adherence to it. The second problem raises the crucial question as to the quality of legal service a client can justifiably expect from his attorney. The third problem poses consideration as to what the State Bar Grievance Board upon complaint is, and should be, doing to determine whether the attorney complained of delivered service consonant with our Code of Professional Responsibility and Canons. The second and third problems, of course, relate to the growing lack of confidence in the legal profession and

the imperative need of Bar and Bench to promote and maintain high professional standards.

The root problem in this matter goes back to the failure of the trial court in the original case to observe the constitutional, statutory and court rule requirements in taking a guilty plea. This root problem was compounded by defense attorney's failure in pleadings attacking the taking of the guilty plea to intelligently review and set forth the transcript of the taking of the guilty plea. As a consequence, none of the reviewing tribunals was alerted to the errors in the acceptance of the guilty plea and the case has at best received superficial treatment with neither satisfaction nor credit to anyone.

# I

It is necessary to set out the facts of this case in some detail. The complaint to the Grievance Board basically alleges failure of defendant Whelan to conduct himself according to the Canons of Legal Ethics as attorney for complainant Holt in seeking to vacate a guilty plea.

Complainant Holt had been charged with raping an 18-year-old deaf mute girl about to be married. With counsel of an attorney other than defendant Whelan, Mr. Holt pled guilty to, and was sentenced for, the lesser offense of attempted rape. After being committed to Jackson prison, Holt sought assigned counsel as an indigent to review his guilty plea proceedings. He was assigned Attorney Whelan.

Attorney Whelan moved in the trial court for vacation of the guilty plea and for a new trial, alleging only that the plea was "not freely and voluntarily made" and "that the Defendant was

induced to make such plea under the assumption and implied promise that the Court would be lenient in its sentence." The trial court denied this motion saying that there was no such promise on the record and "[t]hat the Defendant's allegations in this regard constitute the barest of legal conclusions." Nothing in the court file suggests that Attorney Whelan supported his allegations with any affidavits, with testimony or with any particulars whatsoever.

Almost simultaneously with the filing of Attorney Whelan's motion and before the hearing and ruling on the motion, complainant Holt sent a motion to the court in the form of a letter. Holt said in his Grievance Board complaint "[w]hile I was waiting for Mr. Whelan to file a motion, I filed my own motion and sent him a copy of it, because Mr. Whelan didn't seem to be doing anything." Attorney Whelan's letter to complainant Holt of April 13, 1971, states:

"Your motion and my motion for new trial were heard by Judge Gallagher yesterday. Both of our motions were denied."

The importance of this motion of Holt's is that in his complaint to the Grievance Board, he alleges that defendant attorney in an interview "told me that he couldn't find any error's *[sic]* in my transcript's *[sic]*, which was not true because I have brought a few of them to his attention." Holt's motion indicates what errors he brought to Whelan's attention.

Specifically, Holt's motion correctly spotted some of the errors committed by the trial court in taking his guilty plea. Furthermore, he correctly brought his own case under, and cited, the United States Supreme Court case of *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969) by

quoting from the dissenting opinion of Chief Judge
T. JOHN LESINSKI in *People v Sepulvado,* 27 Mich
App 66, 72 (1970). *People v Jaworski,* 25 Mich App
540 (1970) was at that moment on appeal to this
Court and was referred to by Chief Judge LESINSKI
in his dissent in *Sepulvado, supra.* We subse-
quently approved Chief Judge LESINSKI's point in
*Jaworski,* and reversed the Court of Appeals. At-
torney Whelan with this information which any
conscientious attorney could have ascertained
could then have meritoriously appealed defendant
Holt's case.

When the motion to vacate the plea was denied
by the trial judge, a claim of appeal was duly filed
on April 20, 1971.

On June 21, 1971, Mr. Holt filed his complaint
with the State Bar Grievance Board against Attor-
ney Whelan. Attorney Whelan failed to respond
within the time alloted and on July 19, 1971, a
final notice before default was sent by the Griev-
ance Board to him. Attorney Whelan then filed his
answer on July 21, 1971.

Mr. Holt also wrote the Court of Appeals con-
cerning his pending appeal and was advised on
August 6, 1971, that Attorney Whelan was late in
filing his brief. On August 6, 1971, Attorney Whe-
lan filed a motion, affidavit and *Anders* brief[1] to
withdraw from representing Mr. Holt on appeal.
On the same date he also filed those documents
with the Grievance Board. His affidavit stated:

---

[1] In *Anders v California,* 386 US 738; 18 L Ed 2d 493; 87 S Ct 1396
(1967) the United States Supreme Court stated "if counsel finds his
case to be wholly frivolous, after a conscientious examination of it, he
should so advise the court and request permission to withdraw. That
request must, however, be accompanied by a brief referring to any-
thing in the record that might arguably support the appeal." 386 US
738, 744. The *Anders* procedure seems inappropriate in this case since
Attorney Whelan filed a motion in the trial court to vacate Mr. Holt's
plea of guilty, thereby indicating his belief that such a motion was
not frivolous.

"That after due consideration and investigation of the entire case and the procedures taken therein, your affiant believes that said claim of appeal is wholly frivolous and without merit."

In his brief Attorney Whelan in referring to the Holt guilty plea procedure said:

"I can speak to the Court from some experience that a majority of our criminal justice and the practice of criminal law in the State of Michigan is handled in just the manner outlined above. It is for this reason that so many of the cases on appeal deal with the manner and form of accepting a plea and passing sentence thereon."

With this statement of his credentials, Attorney Whelan asked the court to review three specific reasons for appeal: first the voluntariness of the plea citing the trial judge's noting that the defendant was "hesitant" and "reluctant" saying that "it should be obvious to the practicing lawyer that the reason for the plea was a fear that he would be found guilty of the greater charge and that he was therefore, 'copping' a plea under the advice of a lawyer"; second, that the judge failed by his examination to establish the facts of the crime pled, and defendant's participation therein, more particularly the failure to establish lack of consent to intercourse; third whether the correction of the sentence maximum *nunc pro tunc* was proper.

On September 8, 1971, according to the Grievance Board brief, "the complaint of Mr. Holt, the answer of Mr. Whelan, with copies of the motion for leave to withdraw and brief in support thereof (7b–11b), was submitted to the Grievance Board." From the brief, and response of counsel at the hearing before this Court, these several documents were the sole basis for the following order dismissing the complaint. The Grievance Board states:

"This complaint by Holt, an inmate of Jackson, against his appointed counsel is groundless.

"Closing letter and dismissal approved. Let a 'No Merit' designation appear on the record."

The only additional matter that may have been before the Grievance Board was a multiple statement form with the heading of this case with the statement "insufficient or no evidence of misconduct" with a circle around the statement "complaint without merit" in the same red ink used to indicate Grievance Board dismissal approved.

Subsequent to the handing down of the Grievance Board's decision, and therefore of no direct relevance, the Court of Appeals, based upon Attorney Whelan's *Anders* brief, dismissed Holt's appeal. This Court denied leave to appeal.[2]

## II

We deal first with the manner in which the defendant's plea of guilty was accepted. The transcript of the guilty plea proceedings was not included in the briefs or appendices of either party in this action. A thorough consideration of this matter requires that the relevant portion of that transcript be set out in full below:

"*The Court:* Are you pleading guilty because you are in fact guilty?

"*The Respondent:* Yes sir.

"*The Court:* Were you acquainted with the complainant, I assume Phyllis Mather?

"*Mr. Woodruff [assistant prosecuting attorney]:* Yes.

"*The Court:* Were you acquainted with Phyllis Mather prior to this event?

"*The Respondent:* No, sir.

---

[2] 386 Mich 785.—REPORTER.

*"The Court:* Did you in fact attempt to have carnal knowledge with her against her will?

*"Mr. Woodruff:* That would be rape, carnal knowledge.

*"Mr. Davis [attorney for defendant]:* Well, now, your Honor—

*"The Court:* Did you attempt to have sexual intercourse without her consent?

*"The Respondent:* Yes, sir.

*"The Court:* What? You seem to have some hesitancy.

*"The Respondent:* No, sir.

*"The Court:* Pleading guilty because you are guilty?

*"The Respondent:* Yes, sir.

*"The Court:* We will try the test on you. If you thought I was going to give you five years would you plead guilty?

*"The Respondent:* Yes, sir.

*"The Court:* You actually did perform the act as charged in the second count?

*"The Respondent:* Yes, sir.

*"The Court:* You brought the young woman in your house and attempted to have carnal knowledge.

*"The Respondent:* Yes, sir.

*"The Court:* And you didn't know her previously?

*"The Respondent:* No, sir.

*"The Court:* No one else was home at the time?

*"The Respondent:* No, sir.

*"The Court:* Mr. Davis has advised you you could have a trial by the court or jury?

*"The Respondent:* Yes, sir.

*"The Court:* You might win?

*"The Respondent:* Yes, sir.

*"The Court:* I just want to be sure that you want to plead guilty.

*"The Respondent:* Yes, sir.

*"Mr. Davis:* I might say, your Honor, I have gone over pretty throughtly *[sic]* with the defendant and explained to him all the possibilities in this matter and what he has available. After all the discussions with him and with the prosecutor, he has indicated to me that this is his plea.

*"The Court:* You will admit, Mr. Davis, he is a little reluctant.

*"Mr. Davis:* Yes, somewhat. But as to the charge before the court now, on this plea, I'm sure he's satisfied, fully informed of the consequences.

*"The Court:* You have confidence in Mr. Davis?

*"The Respondent:* Yes, sir.

*"The Court:* Very well, I'll accept your plea of guilty to Count Two, Count One to be dismissed at the close of the appeal period. Bond to continue, sentencing will be December 4 at nine o'clock in the morning."

The United States Supreme Court held in *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969) that it would not infer a waiver of certain constitutional rights from a silent record. Those rights included the right against self-incrimination, the right to trial by jury, and the right to confront one's accusers. This Court has applied the *Boykin* requirements in the past,[3] and also recognized them in its drafting of a new court rule concerning the acceptance of guilty pleas.[4]

Examination of the plea transcript set out above reveals that the trial judge informed the defendant of his right to a trial by the court or by jury. He failed, however, to advise the defendant of his right against self-incrimination and of his right to question witnesses against him. As we held in *People v Jaworski,* 387 Mich 21 (1972), a deficiency of this nature in the plea-taking procedure constitutes reversible error.

Having determined that Mr. Holt's plea of guilty was improperly accepted, we must now consider whether Attorney Whelan's representation of Mr. Holt on appeal was so inadequate as to constitute professional misconduct on his part.

---

[3] See *People v Jaworski,* 387 Mich 21 (1972).

[4] The proposed new GCR 1963, 785.3–785.11 appears in July, 1972 volume of the Michigan State Bar Journal.

### III

Under the circumstances of this case we must determine the quality of legal services which an indigent defendant is entitled to from his court-appointed appellate counsel. We hold as a fundamental precept that a lawyer's duty to his client in a criminal case is judged by the same standard regardless of the fact that his client may be indigent. Professional misconduct by an attorney will not be condoned due to the fact that the attorney's client was in an impoverished condition. The application of our Code of Professional Responsibility and Canons is not dependent upon the size of the retainer which an attorney receives.

Canon 6 of our Code states as a general tenet that "A Lawyer Should Represent a Client Competently". If an attorney is incompetent to handle a particular case, he is guilty of professional misconduct if he nevertheless undertakes to represent a client in that case. Furthermore, though an attorney may be competent to accept the assignment of a case, the manner in which he conducts the case may be so inadequate or misguided as to constitute negligence on his part.

This Court has empowered the State Bar Grievance Board to determine in individual cases whether or not a lawyer's representation of his client was incompetent or negligent and thus constituted professional misconduct. We must now examine the investigation and disposition of the Grievance Board in the instant case.

### IV

Mr. Holt's complaint to the State Bar Grievance Board alleged that Attorney Whelan failed to find any errors in the transcript of Mr. Holt's guilty

plea, even though Mr. Holt had called certain defects to his attention. The complaint alleged further that Attorney Whelan failed to answer letters sent to him by his client Mr. Holt, and that he failed to supply Mr. Holt with copies of various motions and briefs.

In his answer to the Grievance Board, Attorney Whelan stated that there were no appealable errors in the guilty plea transcript. He answered further that in his opinion several of Mr. Holt's letters did not require replies. Finally, Attorney Whelan admitted that he should have sent Mr. Holt copies of the documents which he requested, though he still emphatically denied any violation of the Code of Professional Responsibility and Canons.

The action of the Grievance Board is described in its own brief:

"The complaint of Mr. Holt, the answer of Mr. Whelan, with copies of the motion for leave to withdraw and brief in support thereof (7b–11b), was submitted to the Grievance Board. It ordered the dismissal of the complaint as being without merit (12b)."

It is apparent that the Grievance Board disposed of this case with a superficial investigation. Mr. Holt alleged that the guilty plea transcript evidenced errors in the manner in which his plea was accepted, yet the Grievance Board failed to even examine that transcript. Mr. Holt alleged that Attorney Whelan was guilty of professional misconduct for failing to answer certain letters, yet the Grievance Board failed to even read those letters. Instead, the Board apparently chose to accept Attorney Whelan's answer as the gospel truth.

The State Bar Grievance Board's cavalier treat-

ment of this case, in and of itself, requires remand to the Board for further consideration. There is also, however, substantial evidence before this Court that suggests Mr. Holt may have been inadequately represented by Attorney Whelan.

As stated earlier, this Court held in *People v Jaworski,* 387 Mich 21 (1972) that when accepting a plea of guilty a trial judge must advise the defendant of his constitutional rights against self-incrimination and to confront his accusers. A brief examination of the nine page guilty plea transcript in this case makes it clear that Mr. Holt was advised of neither of those rights by the trial judge. Based on the assumption that any competent attorney would have read this transcript we must conclude that he would have recognized the failure of the trial court to advise his client of those rights.

It is true that *Jaworski, supra,* was decided on March 9, 1972, while Attorney Whelan was assigned as appellate counsel for Mr. Holt on February 16, 1971. Mr. Jaworski's conviction had, however, been affirmed by the Court of Appeals on July 29, 1970, and this Court had granted leave to appeal in that case on October 15, 1970. Therefore on the date that Attorney Whelan was assigned as counsel for Mr. Holt, proper legal research would have revealed that a case with the identical issue as Mr. Holt's case had been pending in the Supreme Court for four months.

Mr. Holt himself called Attorney Whelan's attention to the *Jaworski* issues. Mr. Holt filed his own motion "for further proceedings" in the trial court and sent a copy of that motion to Attorney Whelan. In that motion Mr. Holt stated:

"I was never advised by my Attorney, or the Court, that I had a right to confront those witness's *[sic]* that

were to appear in court against me, nor was I advised of my right against compulsory self-incrimination." Mr. Holt then proceeded to quote a lengthy quotation from Chief Judge LESINSKI's dissenting opinion in *People v Sepulvado,* 27 Mich App 66 (1970), another case dealing with the *Boykin* issues. In spite of all of the foregoing, Attorney Whelan still remained convinced that Mr. Holt's "claim of appeal is wholly frivolous and without merit." At no stage of the proceedings did Attorney Whelan present any argument in behalf of Mr. Holt based upon the *Boykin* requirements.

As noted earlier, Canon 6 requires generally that "A Lawyer Should Represent a Client Competently." Disciplinary Rule 6-101 (A) (2) states:

"DR 6-101 FAILING To ACT COMPETENTLY.
(A) A lawyer shall not:
(2) Handle a legal matter without preparation adequate in the circumstances."

Ethical Consideration 6-2 of the American Bar Association Code of Professional Responsibility states:

"A lawyer is aided in attaining and maintaining his competence by keeping abreast of current legal literature and developments, participating in continuing legal education programs, concentrating in particular areas of the law, and by utilizing other available means." (Footnote omitted.)

We reach the conclusion that whether or not Attorney Whelan's course of action in this case constituted either incompetency or such negligence as to reach professional misconduct is a question which the State Bar Grievance Bar must consider in a complete hearing of this case.

We note the conclusions reached by Justice T. E. BRENNAN in *Leitman v State Bar Grievance Board,* 387 Mich 596 (1972), concerning the type of

appeals from the Grievance Board which come before this Court as a matter of right. In the future, appeals from an administrative dismissal by the Grievance Board should come before this Court in the form of applications for leave to appeal with the Grievance Board as the named appellee. Accordingly, the title of the instant case is amended to read "Kenneth L Holt, Complainant-Appellant v State Bar Grievance Board, Respondent-Appellee."

Dismissal vacated and remanded to the State Bar Grievance Board for further proceedings pursuant to this opinion.

T. M. Kavanagh, C. J., and Swainson, J., concurred with Williams, J.

T. G. Kavanagh *(concurring in result)*. I agree with my Brother Williams that whether or not attorney Whelan was guilty of negligence amounting to professional misconduct in the circumstances of this case is a matter that should be deliberately determined by the State Bar Grievance Board. I too am not impressed with their dismissal of the Request for Investigation in what strikes me as an off-hand manner.

Although I share my Brother T. E. Brennan's misgivings about the equation of lack of prescience with negligence, I would not enshrine it as a matter of law. I think the Board should make that judgment first.

Adams, J., concurred with T. G. Kavanagh, J.

T. E. Brennan, J. *(dissenting)*. I certainly can't agree with my Colleague's submitted opinion here, especially the idea that the lawyer was somehow guilty of negligence because he did not have *pre*

knowledge of *Jaworski.** There was no way for a lawyer to have guessed that *Jaworski* was coming. Indeed, I can't believe it yet.

BLACK, J., concurred with T. E. BRENNAN, J.

* *People v Jaworski,* 387 Mich 21 (1972).—REPORTER.