PEOPLE v JAWORSKI

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—APPEAL AND ERROR—MOTION TO WITHDRAW PLEA.

The preferable and correct procedure rather than appealing from the acceptance of a plea of guilty should be to raise the question by motion to vacate the sentence and withdraw the plea where the error alleged, while going to the jurisdiction, is a simple matter of law or procedure easily considered and determined on the record by the trial judge as, such collateral attack has the advantage of giving the trial judge the opportunity to consider whether or not his prior and complained of action was correct or not, and, if not, to take necessary steps to correct it; an appellate court would receive the case similar to a trial case after the trial court had ruled on a specific exception with adversary arguments if necessary and such collateral attack at the trial court level would have the additional benefit of being brought before the original trial court without the delay and expense of preparing an appellate record, etc.

2. CRIMINAL LAW—PLEA OF GUILTY—CONSTITUTIONAL LAW—SELF-INCRIMINATION—JURY TRIAL—CONFRONTATION OF ACCUSERS—WAIVER—RECORD OF PLEA.

A defendant, seeking to enter a plea of guilty, must be informed of Federal constitutional rights of the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers, for without knowledge he cannot understandingly waive those rights and the record must show that he has been informed of each and all of these rights.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 6, 7, 9–11] 21 Am Jur 2d, Criminal Law § 484 et seq.
[3] 20 Am Jur 2d, Courts § 236.
    21 Am Jur 2d, Criminal Law § 484 et seq.
    Comment Note.—Prospective or retroactive operation of overruling decision. 10 ALR3d 1371.
[5] 7 Am Jur 2d, Attorneys at Law § 8 et seq.
[8] 21 Am Jur 2d, Criminal Law § 309 et seq.

3. CRIMINAL LAW—PLEA OF GUILTY—COURTS—DECISIONS.

A plea of guilty accepted after June 2, 1969, was after a United States Supreme Court decision of that date, which concerned pleas of guilty, and therefore was governed by that decision.

4. CRIMINAL LAW—PLEA OF GUILTY—CONSTITUTIONAL LAW—SELF-INCRIMINATION—REMAND.

Conviction should be vacated and case remanded to circuit court for further proceedings consonant with the opinion of the Michigan Supreme Court where an examination of the transcript of the proceeding in which defendant's plea was taken and defendant's written statement submitting a guilty plea reveal no reference whatsoever to defendant's constitutional right against self-incrimination and review of the records of all lower court proceedings reveals nothing which supplies this deficiency in the plea proceedings.

5. CRIMINAL LAW—ATTORNEY AND CLIENT—OFFICERS OF COURT.

The Michigan Supreme Court shall look to counsel in all criminal cases to advise their clients to the best of their ability and as well or better than the high standard that the State Bar will seek to impose; but further than that the Michigan Supreme Court, regarding attorneys as officers of the court, will look to them to cooperate with the courts and not only to see that their clients are personally well advised by them, but that the court will be assisted to see that all a client's rights are protected on the record.

DISSENTING OPINION

T. E. BRENNAN, J.

6. CRIMINAL LAW—PLEA OF GUILTY—WAIVER—CONSTITUTIONAL LAW.

*A plea of guilty is the waiver of several of the defendant's constitutional rights, including those of trial by jury, to confront accusers, and not to be a witness against one's self, and no separate waiver is or ever was required.*

7. CRIMINAL LAW—PLEA OF GUILTY—WAIVER—CONSTITUTIONAL LAW.

*A plea of guilty is a waiver of many constitutional rights other than the rights to trial by jury, to confront accusers, and not to be a witness against one's self; the right to have compulsory process for obtaining witnesses in one's favor is a good example (US Const, Am 6).*

8. CRIMINAL LAW—PLEA OF GUILTY—CONSTITUTIONAL LAW—APPEAL AND ERROR.

*It ought to be assumed that a defendant represented by counsel has been advised of his rights.*

9. CRIMINAL LAW—PLEA OF GUILTY—VOLUNTARINESS.'

*A record silent on the question of voluntariness of a plea of guilty was prohibited to the states by a decision of the United States Supreme Court; that decision requires nothing more of state judges than Rule 11 requires of Federal judges (FR Crim P, 11).*

10. CRIMINAL LAW—PLEA OF GUILTY—VOLUNTARINESS.

*A trial judge must inquire into voluntariness of a plea of guilty, because he must satisfy himself that the plea is voluntary; where a trial judge made all of the usual and necessary inquiries into threats, promises and the like and obtained from the defendant's own lips the admission that he attempted to break into a store and carried on such a dialogue with the defendant that any objective observer would have to conclude that the defendant understood the nature of the charge and the consequence of his plea, nothing more was required (GCR 1963, 785.3[2]; FR Crim P, 11).*

### DISSENTING OPINION
### BLACK, J.

11. CRIMINAL LAW—PLEA OF GUILTY—STATUTES—COURT RULES—CONSTITUTIONAL LAW—PLEA BARGAINING—TRIAL STRATEGY.

*Entry of a plea of guilty complied fully with all the requirements of Michigan statutes and court rules and with all the Federal constitutional requirements where the record shows that defendant was originally charged with a crime the maximum penalty for which is ten years imprisonment; that he, while represented by counsel throughout the case, stood mute at the arraignment; later defendant pled guilty to an added count, the maximum penalty for conviction under it being only five years imprisonment; as this is a typical, non-silent record of plea bargaining which is a recognized form of trial strategy (MCLA 768.3; GCR 1963, 785.3).*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Danhof and Snow, JJ., affirming Oakland, Arthur E. Moore, J. Submitted June 24, 1971.

(No. 30 June Term 1971, Docket No. 52,997.) Decided March 9, 1972.

25 Mich App 540 reversed.

Paul Joseph Jaworski was convicted, on his plea of guilty, of attempted breaking and entering. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed, conviction vacated, and remanded to circuit court.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Thomas G. Plunkett*, Prosecuting Attorney, and *Dennis Donohue*, Chief Appellate Counsel, for the people.

*Douglas Chartrand*, for defendant on appeal.

WILLIAMS, J. At issue in this case[1] is whether a

---

[1] This case is one of the quartette of *People v Rufus Williams*, 386 Mich 277 (1971), *People v Jaworski*, 387 Mich 21 (1972), *People v Butler*, 387 Mich 1 (1972) and *People v Johnson*, 386 Mich 305 (1971). Together they consider the principal rules of law relating to the taking of guilty pleas. *Williams* relates more particularly to the requirement that the trial judge ascertain the factual basis of the alleged crime to which the defendant is pleading guilty, especially in light of *People v Barrows*, 358 Mich 267 (1959). *Jaworski* deals with whether the plea was *understandingly* made, more specifically with whether the defendant was adequately advised of his rights so that his guilty plea constitutionally waived them. *Jaworski* also considers the general implications of *Boykin v Alabama*, 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969). *Butler* is a pre-*Boykin* case. Its main point is whether substantial compliance requires advising defendant of substantially all of his rights or substantially advising defendant of all his rights. *Johnson's* main consideration is whether the guilty plea was *voluntarily* made, more specifically whether it was made without *duress* or *promise of leniency*. It also deals with the *Boykin* challenge. Procedurally, since *Johnson's* main point is not a guilty plea record matter, *Johnson* also considers how and when such review should be handled.

These cases also conclude that the state of the law on this subject and the general understanding of the law leaves much to be desired. The Supreme Court has set up a committee to consider the whole matter and recommend clarifying and definitive rules to be strictly followed after adoption.

plea of guilty in a state criminal proceeding accepted after the decisional date of *Boykin* v *Alabama*, 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969) must be set aside where the record of the plea proceedings shows that the defendant was advised of two of the three, but not the third, of the three constitutional rights *Boykin* found involved in a waiver of a guilty plea. The record shows that the defendant was advised of his right to trial by jury and his right to confront his accusers but not his right against self-incrimination.[2]

Defendant was charged with breaking and entering. At his arraignment the defendant, while represented by counsel, stood mute and the court entered a plea of not guilty as required by statute. Subsequently, the prosecution added a second count of attempted breaking and entering to which defendant pled guilty with the advice of counsel. His plea was accepted on September 8, 1969, and defendant was sentenced to a term of four to five years in prison.

In this appeal,[3] defendant Jaworski contends that *Boykin* requires on-the-record statements showing

---

[2] *People* v *Jaworski*, 25 Mich App 540, 543, 544, fn 1 (1970).

[3] Docket entries show that defendant pled guilty September 8, 1969, was sentenced September 29, 1969, and by October 9, 1969, the first steps to appeal at public expense had already been initiated. It is recognized that it was observed by then Chief Justice T. E. BRENNAN in *People* v *Taylor*, 383 Mich 338, 359 (1970), in a divided Court, that appeal from a guilty plea lay where the attack went to the jurisdiction. But it is this writer's opinion that in a case such as this where the error alleged, while going to the jurisdiction, is a simple matter of law or procedure easily considered and determined on the record by the trial judge, the preferable and correct procedure should be to raise the question by motion to vacate the sentence and withdraw the plea of guilty.

Such collateral attack has the advantage of giving the trial judge the opportunity to consider whether or not his prior and complained of action was correct or not, and, if not, to take necessary steps to correct it. Such steps probably would be to vacate the sentence and permit the withdrawal of the plea and proceed afresh. Not only would the trial judge have the opportunity to consider whether or not his action was correct, as he would when a trial ruling was objected to, but the appellate court would receive the case similar

that he was separately informed of and individually waived each of the following: 1) the right to trial by jury; 2) the right to confront one's accusers; and 3) the privilege against self-incrimination. The record contains specific questions by the trial court and answers by the defendant demonstrating that these alleged requirements were well met regarding the first two constitutional rights. However, it is silent as to the privilege against self-incrimination. In a divided decision the Court of Appeals affirmed the plea conviction. The Court of Appeals held:

"We think the *Brady* decision has made clear that *Boykin* did not hold that there must be on the record waivers of *each* of the enumerated Federal constitutional rights before a guilty plea can be accepted.

"The court in *Boykin* did say, p 240:

" 'Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it.'

"In the case before us the record is not silent on trial strategy. Rather, it shows that defendant was originally charged with a crime the maximum penalty for which is ten years imprisonment. The record further shows that the defendant, while represented by the same counsel as has represented him throughout this case, including this appeal, stood mute at the arraignment. Later the defendant pled guilty to an added count, the maximum penalty for conviction under it being only five years imprisonment. This is a typical, non-silent record of plea bargaining which is a recognized form of trial strategy." 25 Mich App 540, 554–555.

_____

to a trial case after the trial court had ruled on a specific exception with adversary arguments if necessary.

Such collateral attack at the trial court level would have the additional benefit of being brought before the original trial court without the delay and expense of preparing an appellate record, etc.

However, rather than remand on procedural grounds only, since important and novel questions are involved this opinion will consider the matter on its merits.

Chief Judge T. John Lesinski dissenting responded to the majority and stated his opinion of *Boykin* as follows:

"The majority herein holds that *Boykin* stands for the proposition that a *valid* plea of guilty waives the three Federal constitutional rights specifically enumerated above. However, a guilty plea, *to be valid*, must be '*understandingly and voluntarily made,*' GCR 1963, 785.3(2); *Boykin, supra,* 395 US at 242, 243. (Emphasis supplied.) In the constitutional sense, a guilty plea cannot be 'understandingly made' unless the defendant has *knowledge* of the consequences of his act. Since the majority agrees that one of the consequences of pleading guilty is to waive three important constitutional rights, it follows that the defendant must have knowledge of the existence of these rights to effectively waive them. See *Johnson* v. *Zerbst* (1938), 304 US 458, 464 (58 S Ct 1019, 82 L Ed 1461) (a valid waiver under the due process clause is 'an intentional relinquishment or abandonment of a known right or privilege'). Contrary to the position of the majority, this, in my opinion, is what *Boykin* stated." 25 Mich App 540, 557–558.

## I.

In *Boykin* a Mobile, Alabama, grand jury issued five indictments against defendant for common-law robbery. Defendant, who was represented by court-appointed counsel, pled guilty to the charges and under Alabama practice a jury fixed his sentence as death, a permissible penalty for robbery under Alabama law. However, the record was completely silent on the point as to any questions by the court or statements by the defendant regarding his plea. On appeal the United States Supreme Court held that "It was error, plain on the face of the record,

for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 US 238, 242; 89 S Ct 1709, 1711; 23 L Ed 2d 274, 279.

Discussing the rationale for this holding, Mr. Justice Douglas opined in the Court's majority. opinion at page 242:

"In *Carnley* v. *Cochran* [citation omitted] we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. *The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel* but intelligently and understandingly rejected the offer. Anything less is not waiver.' (Emphasis added.)

"We think the same standard must be applied to determining whether a guilty plea is voluntarily made  *  *  *

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination  *  *  *  . [Citation omitted.] Second, is the right to trial by jury. [Citation omitted.] Third, is the right to confront one's accusers. [Citation omitted.] *We cannot presume a waiver of these three important federal rights from a silent record.*" (Emphasis added.) *Boykin* v *Alabama, supra,* pp 242–243.

While it may be true, as the majority of the Court of Appeals reasoned, that *"Boykin* is devoid of any specific language stating that in order to have a valid waiver of the three Federal constitutional rights involved when a plea of guilty is entered the three rights must be specifically enumerated and specifically waived", 25 Mich App 540, 548, in our opinion both Justice Douglas' language and his logic

require that the defendant must be informed of these three rights, for without knowledge he cannot understandingly waive those rights.

For example, Justice Douglas in the *Boykin* opinion, 395 US 238, 242, set forth above, quoted *Carnley* v *Cochran,* 369 US 506; 82 S Ct 884; 8 L Ed 2d 70 (1962) as follows:

" 'The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer.' "

While the case quoted involved only one right, it clearly required that the defendant be advised of that right on the record or by proper allegation and evidence. There is no apparent logic why if three rights were involved, it would serve to advise the defendant of only one or two, because the purpose is to enable the defendant to make an intelligent and understanding decision. It is hard to argue that making a decision based on one third or two thirds of the facts, assuming knowledge of these rights would have equal impact, is intelligent; it certainly is not understanding. One thinks irresistibly of the common term "half-baked opinion."

Furthermore, immediately after the quotation "We cannot presume a waiver of these three important federal rights from a silent record" 395 US 238, 243, quoted above, is a small arabic 5 indicating an explanatory footnote. Footnote 5 deserves to be read and is set forth in appropriate part here:

"[5] In the federal regime we have Rule 11 of the Federal Rules of Criminal Procedure which governs the duty of the trial judge before accepting a guilty plea. See *McCarthy* v. *United States,* 394 U. S. 459 [89 S Ct 1166; 22 L Ed 2d 418 (1969)]. We said in that case:

" 'A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst*, 304 U. S. 458, 464 [58 S Ct 1019; 82 L Ed 1461] (1938). Consequenty, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.' "

This footnote again emphasizes "a known right or privilege." Here the reference both in the main text of the opinion and in the footnote is to the three rights here in question. The singular form of "right and privilege" in the footnote is because of interpolation of a quotation from *Johnson* v *Zerbst, supra,* which referred to a single right, although the context of the footnote obviously refers to all three rights or to each of the three individually.

Chief Judge T. JOHN LESINSKI in his dissenting opinion in the part quoted above relies on the same reasoning. We hold that his is the correct interpretation of *Boykin* and that the record must show that the defendant has been informed of each and all of the three constitutional rights he waives on pleading guilty.

## II.

The United States Supreme Court handed down the *Boykin* decision on June 2, 1969. This defendant's guilty plea was accepted on September 8, 1969. Thus there is no question of retroactivity here. The plea in the instant case was taken after *Boykin* had been decided, and therefore was governed by that decision.

### III.

The transcript of the proceeding in which the defendant's plea was taken and the defendant's written statement submitting a guilty plea are set out in full as an appendix to this opinion. Examination of it reveals no reference whatsoever to defendant's constitutional right against self-incrimination.

Review of the records of all lower court proceedings reveals nothing which supplies this deficiency in the plea proceedings. Therefore, we must vacate the defendant's conviction and remand to the circuit court for further proceedings consonant with this opinion.

### IV.

Without at this time going into the matter at length, as we have already done so in *People* v *Rufus Williams,* 386 Mich 277 (1971), it is fitting to note that the trial court's failure to advise the defendant of his right against self-incrimination has engendered needless review in the appellate courts. This is just another indication of the importance of the trial court making a full and complete record of protecting all the defendant's rights not only for the sake of protecting the defendant but for the sake of not wasting judicial time on unnecessary review. As indicated in *Williams,* this Court has set up a group to review our system and recommend a new rule to this Court if advisable.

While we have pointed out the consequences of the failure of the trial court to advise the defendant of an essential right, nonetheless we note favorably the exemplary plea procedure in the trial court except for the failure to follow one of the *Boykin* requirements, which essentially reflect our own Court Rule 785.3. It is regrettable that so much care and

attention should stumble on so salient a point. It is hoped that with the review of plea taking initiated by this Court in *Williams,* all the courts and the Bar of Michigan will be prepared to cooperate in a plea procedure that will be just, efficacious and expeditious without the burden of unnecessary review.

This Court could not fail to note that this appeal was brought by the same counsel who assisted the defendant, and, presumably as an officer of the court, the trial court as well. A certain anomaly is evident. On the one hand this attorney counseled with defendant presumably advising him of his legal rights in submitting a guilty plea, in this case even certifying in writing, with approval, defendant's written statement that he pleads "understandingly."[4]  On the other hand, the same counsel, not too many months later, helps defendant petition to review the guilty plea procedure on the claim that defendant did not "understandingly" waive his *Boykin* rights.

The anomaly presents a dilemma. There are esteemed jurists including those who have sat on this bench who have felt that guaranteeing counsel to defendant practically assures defendant all his legal rights, unless counsel proves incompetent in the case. There are others that feel defendant's rights are so basic that while assistance of counsel is the best assurance that the defendant will have concerned and learned advice, the court should still on the record advise defendant so that defendant's rights will not only be presented to him but impressed upon him.

In this case, if we were to follow the philosophy that assuring counsel insures understanding pleas,

---

4 The *Jaworski* plea was taken September 8, 1969. Counsel served a brief in *People* v *Butler,* 387 Mich 1 (1972) raising a *Boykin* issue September 10, 1969, suggesting an awareness of *Boykin* at the time he counseled Jaworski. The *Boykin* decision came down June 2, 1969.

we should dismiss the petition for review—somewhat leaving counsel hoisted on his own petard as far as serving his client. On the other hand, if we should grant relief, we would in effect be passing judgment *sub silentio* that we could not as a judicial procedure rely on counsel to fully advise a defendant of his rights.

This leaves unspoken a theoretical further alternative, namely a criminal trial as an adversary procedure not only between defendant and prosecutor, but between defendant and the court as well. The implications of this certainly do not comport with this Court's philosophy of the proper administration of justice. As a consequence, we shall look to counsel in all criminal cases to advise their clients to the best of their ability, and as well or better than the high standard that the State Bar will seek to impose. But further than that this Court, regarding attorneys as officers of the court, will look to them to cooperate with the courts and not only see that their clients are personally well advised by them, but that the court will be assisted to see that all of a client's rights are protected on the record. An attorney will do this not only in fulfillment of his oath and duty as an attorney, but also because any petition for review that is based on the defendant seeking a plea review on the grounds he did not enter his plea understandingly is a reflection on both the court and the defendant's counsel, and incidentally insofar as proper procedure could have avoided the necessity of review, a burden on the administration of justice, and a disservice, if not an injustice, to others who have occasion to employ or operate the machinery of justice.

Reversed, conviction vacated, and remanded to the circuit court for further proceedings consonant with this opinion.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and SWAINSON, JJ., concurred with WILLIAMS, J.

ADAMS, J., concurred in the result.

## APPENDIX

## TRANSCRIPT OF PROCEEDINGS ON SEPT. 8, 1969

Change of Plea

*Mr. Boyer* [*assistant prosecuting attorney*]: Your Honor, in this matter entitled CR 69–5297, People of the State of Michigan versus Paul Joseph Jaworski, Mr. Jaworski is charged with breaking and entering of a business establishment, that charge carrying a maximum penalty of ten years.

(*Defendant standing.*)

*Mr. Boyer:* At this time the people would move to add a second count prior to proceeding with trial and that count being attempted breaking, attempting to break into a business establishment, carrying a five year maximum prison sentence, being contrary to Section 28.287.

*Mr. Chartrand* [*attorney for defendant*]: No objection to the addition of the second count, Your Honor.

*The Court:* It is so ordered.

*Mr. Chartrand:* At this time we would waive the reading of the information on the second count, Your Honor, and I have discussed this matter fully with the defendant and according to him it is his desire at this time to enter a plea of guilty as to the second count only.

*The Court:* Your name is Paul Jaworski, J-a-w-o-r-s-k-i?

*Defendant Jaworski:* Yes, sir.

*The Court:* How old are you?

*Defendant Jaworski:* 30.

*The Court:* You have heard the statement of Mr. Chartrand, your attorney?

*Defendant Jaworski:* Yes, sir.

*The Court:* How do you plead to the added count?

*Defendant Jaworski:* Guilty, Your Honor.

*The Court:* Do you understand fully what the added count is?

*Defendant Jaworski:* Yes, sir.

*The Court:* What do you understand the charge is, what does it charge you with?

*Defendant Jaworski:* Attempting to break into a business.

*The Court:* What did you do?

*Defendant Jaworski:* Attempted to break into a store.

*The Court:* Where was the store?

*Defendant Jaworski:* Northwestern and Orchard Lake Road.

*The Court:* Was this on the date charged?

*Defendant Jaworski:* Yes, sir.

*The Court:* Do you know that you are presumed innocent at this time, that that presumption will continue with you throughout a trial. That the prosecution has the burden of proof of your guilt beyond a reasonable doubt. That you must be confronted by witnesses, with the opportunity of cross examining them and that you are entitled to jury trial or trial by the court without a jury. Do you understand these things?

*Defendant Jaworski:* Yes, sir.

*The Court:* Do you knowingly and intentionally plead guilty as you have indicated, having in mind the consideration of these matters I have just mentioned?

*Defendant Jaworski:* Yes, sir.

*The Court:* Have any threats, promises, or other inducements obtained this plea or is it voluntarily made?

*Defendant Jaworski:* Voluntarily made.

*The Court:* Have you been promised leniency or any particular consideration for your plea?

*Defendant Jaworski:* No, sir.

*The Court:* The plea is accepted. The matter is referred to the Probation Department for pre-sentence investigation, and the case will be continued to and sentence will be had on the 29th day of September, next, at nine o'clock.

Is he incarcerated on failure of bond at the present time?

*Mr. Boyer:* Yes, Your Honor, he is.

*The Court:* What is the bond?

*Mr. Boyer:* Bond is $10,000.00, cash or security, and I show that it has not been furnished.

*The Court:* He is held for other offenses, do you have his prior record?

*Mr. Boyer:* Not to my knowledge, Your Honor. He does have a prior record, but is not being held for anything.

*The Court:* Very well. Bond may be continued. Anything further?

*Mr. Chartrand:* Nothing further, Your Honor.

*The Court:* Very well.


WRITTEN STATEMENT OF RESPONDENT
AND HIS COUNSEL AND PLEA OF GUILTY

TO THE ABOVE COURT:

I hereby tender to this court a plea of Guilty to Count II of the Information filed in this cause; namely, to the offense charged—Attempted Breaking into a Business Establishment, (describe concisely) and do hereby state and represent to the court as follows:

1. I know, have read, heard read, understand, and have a copy of the information in this cause.

2. I know and understand the elements of the offense, of which I am charged and which must be proved against me, are as follows:
    To-wit, that:
        (a) Did attempt to enter or break into a business establishment

(b)  with intent to commit a felony therein.

(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. I know I am entitled to a trial by jury, or by the court, and that at such trial I will be presumed innocent until I have been proven guilty, and that my guilt must be established by the prosecution beyond a reasonable doubt.

4. I have previously had full and adequate opportunity to converse and counsel with my lawyer and with such of my friends and relatives as I desire.

5. I know and understand that on being found guilty, or on a plea of guilty being accepted and entered, this court may impose a sentence upon me of—

(a)  probation for a period of years, or

(b)  imprisonment in the SPSM (Jackson) . . . . . . . . . . . . . . for a minimum term of 1 year, to a maximum term of 5 years, and

(c)  that a fine in addition or in the alternative may be imposed in the maximum amount of $. . . . . . . . . . . . . . .

6. I plead guilty because I am guilty, and I do so voluntarily, freely, understandingly, and without promise of leniency, and without any undue influence, compulsion, duress, threat or constraint.

Paul J. Jaworski (signed)<br>Respondent

DATED: Sept. 8, 1969

I, attorney of record for said respondent, hereby certify that his foregoing statement is voluntarily made, and that I agree thereto and approve thereof.

Douglas Chartrand (signed)<br>Attorney for Respondent<br>Business Address:<br>202 Pontiac Mall Off. Bld.<br>Pontiac, Mich

DATED: Sept. 8, 1969

T. E. Brennan, J. (*dissenting*). This case sets the *Boykin* controversy in the clearest possible light.

Boykinism can be divided into three varieties.

(1) *Pure Boykinism* holds that the record of a guilty plea, to pass constitutional muster, must contain:

(a) a statement of advice by the judge to the defendant, wherein the judge tells the defendant that he has three constitutional rights, (1) trial by jury, (2) to confront his accusers, and (3) not to be a witness against himself.

(b) a statement by the defendant, separate and apart from his guilty plea, by which the defendant, expressly waives each of these rights on the record.

*Pure Boykinism* waives the banner of *Carnley* v *Cochran,* "Presuming waiver from a silent record is impermissible."

The error of *Pure Boykinism,* of course, is that it ignores the words of the United States Supreme Court in *Boykin* v *Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969), "Several federal constitutional rights are involved in a *waiver that takes place when* a plea of guilty is entered * * * ."

The *plea* is the *waiver. Boykin* says so. No separate waiver is, or ever was required.

(2) *Orthodox Boykinism* recognizes that the guilty plea is itself the waiver, but insists upon the judicial statement of advice. By far the largest branch of the movement, this theory holds that no plea is valid upon its face unless the judge has told the defendant—whether represented by counsel or not—of each and every constitutional right he is about to waive by entry of his guilty plea. *Orthodox Boykinism* conclusively presumes that an accused person cannot know anything except what the judge has told him. It reasons thus:

A defendant can know nothing but what the judge tells him.

The judge failed to tell the defendant of a constitutional right.

ERGO: The defendant did not know of the constitutional right.

This process goes on to the logical conclusion that, since the defendant did not know of his constitutional right, his plea was not "understandingly and voluntarily" made.

It is obvious of course that a guilty plea is a waiver of many constitutional rights not enumerated in *Boykin*. The Sixth Amendment right to have compulsory process for obtaining witnesses in one's favor is a good example. *Orthodox Boykinism* has not yet embraced the Sixth Amendment right to compulsory process. It seems to presume that since the United States Supreme Court failed to mention compulsory process, ignorance of that constitutional right has not yet risen to the dignity of involuntariness. The same can be said of speedy trial, double jeopardy and the like.

Common sense tells us that the major premise of this school of thought is less than axiomatic. Defendants indeed know many things which they have not heard from judicial lips.

If the defendant is a professor of constitutional law, or a veteran criminal and jail-house advocate, even *Orthodox Boykinism* will stumble red-faced to carve out exceptions to its own unyielding syllogism.

(3) *Ecumenical Boykinism* does not require the judge to play the role of the defense attorney. It merely requires a recitation of constitutional rights, either on the record, or on a piece of paper, duly signed in the defendant's own hand.

It proceeds on the theory that defendant's attorneys are presumed incompetent or dishonorable.

It holds out to appellate judges the false hope that a guilty plea can somehow be "buttoned down", in a fashion so secure and final that those convicted upon guilty pleas will uniformly eschew the prison law library in favor of more rehabilitative pursuits.

But the argument falls on both logical and practical grounds. First, it ought to be assumed that a defendant represented by counsel, has been advised of his rights. Second, it ought to be abundantly clear that the more i-dotting and t-crossing is required of trial judges by appellate judges, the more fodder there will be for post-conviction applications.

Fortunately, there is another side to the *Boykin* story. It is simply that *Boykin* v *Alabama* does nothing more than accomplish the "bizarre" result ascribed to by *Mr. Justice Harlan:*

"The Court thus in effect fastens upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure. It does so in circumstances where the Court itself has only very recently held application of Rule 11 to be unnecessary in the federal courts. See *Halliday* v. *United States,* 394 U.S. 831 [89 S Ct 1498; 23 L Ed 2d 16] (1969). Moreover, the Court does all this at the behest of a petitioner who has never at any time alleged that his guilty plea was involuntary or made without knowledge of the consequences. I cannot possibly subscribe to so bizarre a result."

What *Boykin* prohibited to the states is a record *silent on the question of voluntariness.*

*Boykin* requires nothing more of state judges than Rule 11* requires of Federal judges.

---

* FR Crim P, 11.—Reporter.

The trial judge must inquire into voluntariness, because the trial judge must satisfy *himself* that the plea is *voluntary*. One cannot read the transcript of the plea in this case without being struck by the inordinate caution of the trial court.

The trial judge made all of the usual and necessary inquiries into threats, promises and the like. He obtained from the defendant's own lips the admission that he attempted to break into a store on Northwestern and Orchard Lake Road, and he carried on such a dialogue with the defendant that any objective observer would have to conclude that the defendant understood the nature of the charge and the consequence of his plea.

Nothing more is required by Federal Rule 11, nothing more is required by *Boykin,* nothing more is required by GCR 1963, 785.3(2).

I vote to affirm the conviction.

BLACK, J. (*dissenting*). I adopt the opinion of Judges DANHOF and SNOW (25 Mich App 540–555) and therefore vote to affirm.