# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 2, 2017

Plaintiff-Appellee,

v

No. 322473
Muskegon Circuit Court

JOSHUA LEVI ALGER,

LC No. 12-061794-FH

Defendant-Appellant.

## ON REMAND

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

This case is before us on remand from the Michigan Supreme Court. We are asked to consider whether defendant's pleas were the result of coercion. Beyond defendant's undetailed assertions at the sentencing hearing, no evidence supports his claim that his pleas were involuntary. We affirm defendant's plea-based convictions. Pursuant to the Supreme Court order, we vacate defendant's sentences and remand for resentencing.

I

Defendant pleaded nolo contendere to charges of assault and domestic violence based on his understanding that he would be sentenced as a third habitual offender. Before sentencing, the prosecution announced that it would seek to enhance defendant's sentences under the fourth habitual offender statute. This change was based on a Colorado conviction, the validity of which defendant vociferously challenged. The trial court accepted the prosecution's argument, sentenced defendant as a fourth habitual offender, and rejected defendant's attempts to withdraw his plea.

We vacated defendant's convictions, reasoning that defendant was not made fully aware of the direct consequences of his plea. Specifically, we noted that "[d]efendant was not fully aware of his habitual offender status before entering his plea because the court had yet to resolve the factual dispute." *People v Alger*, unpublished opinion per curiam of the Court of Appeals, issued June 16, 2016 (Docket No. 322473), unpub op at 7. As the Colorado Court of Appeals had since reversed defendant's conviction, we ordered, "the trial court will actually be required to treat defendant as a habitual offender, third offense." *Id*. at 8. On remand, defendant would have had the choice to withdraw his plea or "to reenter a plea on the corrected information." *Id*.

-1-

The Supreme Court vacated this portion of our opinion, stating, "Where the defendant knowingly pleaded no contest being aware of the maximum possible prison sentences he was facing, he did not establish that an error occurred in the plea proceeding that would entitle him to have his plea set aside." *People v Alger*, ___ Mich ___ (Docket No. 154247, entered February 3, 2017). The Supreme Court then remanded the matter to this Court to address an issue we left undecided—whether defendant felt coerced into pleading nolo contendere to escape conditions in the Muskegon County Jail. *Id.*

II

We outlined the legal principles underlying the acceptance and withdrawal of pleas in our previous decision:

> We review "for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). Our review is de novo with respect to underlying constitutional issues, as well as the interpretation and application of the court rules. *People v Cole*, 491 Mich 325, 329-330; 817 NW2d 497 (2012). In *Cole*, the Michigan Supreme Court addressed the due process requirements related to the entry of a nolo contendere plea and the associated waiver of various constitutional rights, observing:
>
> > A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin v Alabama*, 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969); *People v Jaworski*, 387 Mich 21, 28-29; 194 NW2d 868 (1972). For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing. *McCarthy v United States*, 394 US 459, 466; 89 S Ct 1166; 22 L Ed 2d 418 (1969); see also *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 2d 162 (1970) (noting that a plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant"). In *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the United States Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." [*Cole*, 491 Mich at 332-333 (footnote omitted).]
>
> In Michigan, the requirements surrounding circuit court acceptance of a nolo contendere plea are provided in MCR 6.302. MCR 6.302(A) provides:
>
> > The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

* * *

Here, although defendant informed his attorney that he wanted to withdraw his plea before the sentencing hearing began, he did not file his motion until after sentence was imposed. MCR 6.310(C) governs the withdrawal of pleas after sentencing in the circuit court as follows:

If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.

Pursuant to this rule, a defendant seeking to withdraw his or her plea after sentence has been imposed must demonstrate a defect in the plea-taking process. *Brown*, 492 Mich at 693. [*Alger*, unpub op at 6-7.]

III

At the plea proceeding, defendant made no mention of his treatment in or conditions at the Muskegon County Jail. When asked, defendant indicated that his plea was made voluntarily and not as the result of any promise or threat. However, at the close of the plea hearing, when defendant learned additional time was required to prepare his presentence investigation report, defendant balked, "This is the reason why I'm making the plea so that I can leave this place." The court offered to contact the Department of Corrections to "see if we can get it accelerated." Defendant responded, "Please. That's the only thing I'm asking the court." Defendant reiterated that he wanted his case concluded: "But nobody wants it more than I do I promise you that."

At sentencing, defendant asserted for the first time that he felt pressured into entering a plea:

I just wanna leave this jail. I've been treated so poorly. I've been abused physically and mentally by the jail and pushed into, into expediting my case and I don't feel safe in this jail any longer and I, it would be in my best interest to leave. And I'll take whatever sentence you're will[ing] to give me right now. Immediately. Today. So I don't have to see you again or anybody and I'll deal with the rest of it in appeals and hopefully I can get my fairness there or hopefully you'll see somewhere behind all of this and, and see the charge for what it is, I don't know, what it is standing there. Maybe you'll, maybe you'll go low for it. I don't know anything else to say. My family's not here. My victim's not here. They should all be here too. I just want it over with. I wanna leave now.

* * *

I wanna leave now. I've attempted to take my life numerous times in this jail. I'm not on medications that I should be on. I haven't had any medical treatment. I have scars and all [this] nasty skin funk all over my body they refuse to treat me for in this jail. I can't take it any longer. I need to leave immediately whether it's prison or Colorado or the infirmiry [sic]. I don't know. I need to leave this place now. I will take your sentence. I don't, I don't have anything, I had a lot to say. I had a speech brought up. I could've called my Colorado attorney. All that's done. I just want this over with. I plead guilty or not [sic] contest to a charge that's ridiculous and I didn't realize the sentencing or the guidelines. Now I do and I don't, I don't know. I had a lot more to say. A lot leveler headed things to say until now. Now I'm not OK. I just want this over with. Please sentence me.

Defendant subsequently filed a motion to withdraw his nolo contendere pleas. That motion focused solely on the habitual offender issue. A hearing was held two months later. Defendant had been extradited to Colorado and was unable to attend the hearing in person or via video. Defense counsel expressed that she had experienced difficulty communicating with defendant as well as with his Colorado attorney. Counsel further noted:

Not only it's our position that he believed he was only going to plead if he was deemed to be a third habitual as opposed to a fourth habitual but this whole issue of his state of mind and his mental capacity at the time of the plea. And he brought that to your honor's attention that he was you know hurrying this along because he was suicidal at the jail. They weren't giving him his medication. He was being mistreated and I indicated that in my motion that I don't believe his plea was voluntary. But I don't think that that's what the focus was during my meeting . . . with him, that that's what he wanted me to concentrate on. He wanted me to focus on the habitual issue.

The court decided to postpone ruling on defendant's motion and allowed defense counsel the opportunity to raise additional grounds in support of the plea-withdrawal motion after conferring with her client. Defense counsel stated her belief that these grounds would include a claim that defendant "should have had some kind of a competency evaluation prior to or during the course of his pre-plea proceedings."

The other thing that I think is important in this case and [defendant] told your honor at the time of the plea that he was pleading because he was not in his right frame of mind. He was suicidal at the jail. I don't know if it had to do with medications or deputies or treatment or non-treatment, but he wanted to plead to get out of the Muskegon County Jail is what I understood him telling your honor at the time that this plea was taken. So that's a second issue, that this plea was not really voluntary. He really didn't want to plead. He only plead[ed] because he didn't want to stay at the jail anymore. That's what he said.

Five months after filing the original withdrawal motion, defense counsel submitted a letter to the court. Counsel indicated that she had spoken with defendant and that she had not previously "raise[d] all of the issues that [defendant] wanted." Counsel enumerated three additional grounds in support of the motion to withdraw defendant's pleas. No mention was made of defendant's treatment in or the conditions at the jail which allegedly led defendant to enter his pleas.

When the trial court finally resolved defendant's motion to withdraw his pleas, it took into consideration defense counsel's oral argument that defendant may not have been of sound mind at the time he entered his plea. The court noted, "Neither the prosecutor, the Defendant or any of his attorneys ever brought to the Court's attention any concerns that he met the definition of competency before entry of the plea." After reviewing the record, the court also observed "no showing of incompetence that would require the Court to refer the Defendant for an evaluation." However, the court did not specifically address defendant's claim that he was coerced into pleading in order to leave the Muskegon County Jail.

Defendant presented no evidence to support the alleged mistreatment that pushed him into entering nolo contendere pleas. Defendant did not request production of his medical records during his incarceration at the jail. He did not offer to show his "scars" or "nasty skin funk" or seek to have the conditions photographed. He presented no evidence that he had been prescribed medications in the past, let alone that he had been deprived of medication in the jail. Beyond a blanket accusation with absolutely no detail, defendant did nothing to establish that he had "been abused physically and mentally by the jail." He did not even request production of jailhouse incident reports to support that he had attempted suicide "numerous times in this jail." Moreover, defendant provides no further detail in his appellate brief regarding these events, merely quoting the relevant portions of the lower court record.

Ultimately, absent any supporting information or details, we cannot conclude that defendant was coerced into entering a plea. "Of course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Brady*, 397 US at 750. Yet, "[j]ail conditions" standing alone "do not make guilty pleas 'coerced.'" *Williams v Meachum*, 592 F Supp 281, 289 (ND OK, 1984) (quotation marks and citations omitted). See also *Langdeau v South Dakota*, 446 F2d 507, 508-509 (CA 8, 1971). To support relief, the defendant must show that the "mistreatment suffered . . . while in jail" was specifically aimed at coercing the defendant to enter a plea. *Cunningham v Wingo*, 443 F2d 195, 204 (CA 6, 1971). The record does not support any of defendant's allegations, let alone that the jail officials mistreated him in order to coerce him into pleading nolo contendere. Accordingly, we have no ground to deem defendant's pleas involuntary.

We affirm defendant's plea-based convictions. As ordered by the Supreme Court, we vacate defendant's sentences and remand for resentencing with a third habitual offender enhancement. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher