*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 13, 2021

Plaintiff-Appellee,

v

No. 350471
Oakland Circuit Court
LC No. 1998-161396-FC

RAND WALTER GOULD,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and SERVITTO and TUKEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's amendment of the judgment of sentence to reflect that defendant was sentenced as a habitual offender, third offense, MCL 769.11. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In July 1998, the victim was taken to a hospital. The victim's then-boyfriend, defendant, went to pick up the victim, but was told the wrong hospital by the police. When defendant made contact with the victim, he was angry with her because he feared that the police deliberately provided wrongful information and were searching their home for drugs while he was at the hospital. The victim went to sleep when they arrived home. However, defendant woke the victim up when he was looking for money to pay for drugs. The victim argued with defendant and began to walk down the hall away from defendant when he slammed her head into the wall, causing her

---

[1] On July 23, 2020, the prosecutor filed a motion to dismiss, asserting that this Court lacked jurisdiction because the prior appeal ordered the correction of the judgment of sentence, and the ministerial task occurred without resentencing. We denied the prosecutor's motion to dismiss, concluding that the amended judgment of sentence was not appealable as of right, but for reasons of fairness and judicial economy, the claim of appeal was treated as a delayed application for leave to appeal and delayed leave was granted. *People v Gould*, unpublished order of the Court of Appeals, entered August 12, 2020 (Docket No. 350471).

-1-

head to bleed. The victim had a teacup poodle, and defendant kicked the dog. The victim tried to escape by throwing herself out the window, but defendant grabbed her and dragged her downstairs.

Once downstairs, defendant hit the victim with a baseball bat and kicked her all over her body. He also gagged her by placing a washcloth in her mouth. Defendant used duct tape to bind her wrists and her ankles together. Defendant tried to choke or strangle her, and this action left handprint size bruises on her neck. He cursed at the victim and spoke of ways that he would kill her and dispose of her body. The victim heard defendant call someone to take her dog. The victim viewed the dog as her child and was more concerned with the well-being of the dog than herself. The victim was unaware of how much time she spent in the basement, but estimated it lasted between hours and days. Eventually, defendant agreed to set the victim free if she promised not to call the police. The victim took a bath, and then defendant drove her to the methadone clinic because she was being treated for heroin addiction. When they arrived back home, the dog was returned, but needed veterinary treatment. The vet advised that the dog needed to be euthanized. At that time, the victim advised of defendant's assault upon her and her fear that he would take her back to the basement. The vet's office called an ambulance and the police.

A paramedic arrived at the veterinary office and found the victim cringing in the corner and covered head to toe with bruises. The victim also had skin tears, especially in the location of her wrists and ankles. The victim reported that she had been assaulted and restrained by defendant, her boyfriend. She became hysterical when she was taken outside and had to pass defendant.

At the hospital, the victim was treated by an emergency room physician and a nurse. The victim was dirty and unkempt and suffered from multiple bruises and lesions on her body. On the back of her head, the victim had a large puncture wound that looked like a skin burst caused by trauma. Additionally, the victim had a big swollen hematoma under her lip. The victim told hospital personnel that she was hit in the head with a baseball bat, choked, punched, and kicked. Her wounds were consistent with her report of an assault by defendant. In fact, the emergency room physician testified that the only way the injuries could have occurred were from a beating or assault. The victim also reported that defendant killed her dog and she feared him.

At trial, defendant asserted that the victim's injuries were self-inflicted. However, the jury convicted defendant as charged of assault with intent to do great bodily harm less than murder, MCL 750.84, killing or torturing an animal, MCL 750.50b(2), and kidnapping by secret confinement, MCL 750.349.

In March 1999, the sentencing hearing occurred. At sentencing, defendant did not dispute his criminal history that included a breaking and entering offense in 1979, and a controlled substance offense in 1991. However, defense counsel stated that defendant could not recall whether or not he was advised of his *Jaworski*[2] rights and questioned the accuracy of the conviction and its propriety for utilization in sentence enhancement. Despite his *Jaworski* challenge to a conviction for purposes of the habitual enhancement, defense counsel acknowledged that there were no appeals of any of the underlying convicted offenses offered in support of the habitual. At the conclusion of defendant's allocution, the prosecutor addressed the convictions offered to

---

[2] *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972).

support the habitual fourth. The prosecutor presented certified copies of convictions from Macomb and Oakland Counties and now asserted that defendant was a habitual third offender, not fourth.

When the trial court asked if there was an agreement with the prosecutor's representation, defense counsel stated that defendant "admits that he had those convictions," but again questioned whether compliance with *Jaworski* occurred. The trial court did not comment further, but proceeded to sentencing. It found that defendant was "an excessively brutal and cruel human being" and that the jury reached "a true and accurate verdict." Defendant was sentenced to 13 to 20 years' imprisonment for the assault conviction, 32 to 96 months' imprisonment for the killing an animal conviction, and 25 to 50 years' imprisonment for the kidnapping conviction.

After the trial court confirmed that defendant was sentenced as a habitual offender, the following exchange occurred on the record:

> *[Defense Counsel]*. Your Honor, just so the record is clear, I thought I articulated, if I didn't, I'm remiss. My client indicated that originally he was charged with an Habitual Fourth, now the prosecutor concedes it's an Habitual Third.
>
> *[The Court]*. And that is what he was sentenced on.
>
> *[Defense Counsel]*. He feels that that is somehow—that [sic] a violation of due process and if they were not able to satisfy the Habitual Third—excuse me, the Habitual Fourth, that the entire habitual enhancement falls by the wayside.
>
> *[The Court]*. Let me put it to you this way. First he's wrong. But even if he were not wrong, the sentence is based on the underlying charge. The habitual has nothing to do with my sentence.

Although the trial court orally sentenced defendant as a third offense habitual offender, the judgment of sentence provided that he was sentenced as a habitual fourth offender, MCL 769.12. The disparity between the oral pronouncement at sentencing and the written judgment of sentence was not raised in his claim of appeal as of right. This Court affirmed defendant's convictions and sentences. *People v Gould*, unpublished per curiam opinion of the Court of Appeals (Docket No. 218729), issued November 27, 2001.

However, in Docket No. 347625, defendant appealed the trial court's order denying his motion to correct his judgment of sentence. Initially, this Court denied defendant's application for leave to appeal. However, on reconsideration, this Court remanded solely for the correction of the judgment of sentence to reflect a habitual third offender, instead of habitual fourth. Specifically, the language of the order provides:

> The motion for reconsideration is GRANTED.
>
> At sentencing, with the agreement of the prosecutor, the trial court stated that defendant was convicted and sentenced as a habitual offender, third offense.

Nevertheless, the judgment of sentence, through what appears to be a clerical error, stated that defendant was convicted as a habitual offender, fourth offense.

> Therefore, we vacate the judgment of sentence, and remand to the trial court to enter a judgment of sentence setting forth that defendant was convicted and sentenced as a habitual offender, third offense. In all other respects, the judgment of sentence shall be unchanged. [*People v Gould*, unpublished order of the Court of Appeals, entered July 17, 2019 (Docket No. 347625).]

On July 23, 2019, the trial court's amended judgment of sentence was filed and provided that "SENTENCE ENHANCED PURSUANT TO MCL 769.13(3RD)." The ministerial correction of the judgment of sentence occurred without a hearing. From this corrected judgment of sentence, defendant appeals.

## II. HABITUAL OFFENDER UNDERLYING CONVICTIONS

Defendant contends that the trial court erred in failing to examine whether the prior convictions listed in the habitual offender charge were infirm, and therefore, a remand for resentencing or additional fact-finding is warranted. We disagree.

"Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019). A review of the record reveals that the trial court's amendment of the judgment of sentence to reflect that defendant was sentenced as a habitual offender, third offense, comports with our order remanding the matter for the ministerial task of correcting the judgment. *Id*.

Nonetheless, defendant asserts that the trial court should have further evaluated the underlying convictions offered in support of the habitual offender, third offense, to determine their validity. However, the scope of this appeal "is limited by the scope of the remand." *People v Jones*, 394 Mich 434, 435; 231 NW2d 649 (1975). Therefore, the scope of this appeal is limited to examining the trial court's compliance with the ministerial task of correcting and amending the judgment of sentence. See *id*. at 435-436. "To allow [the defendant] to raise trial related matters on this second appeal would, in effect, be granting two rights of appeal to the same final determination" and render the court rules governing the taking of an appeal as of right meaningless. *People v Pickett*, 391 Mich 305, 316-317; 215 NW2d 695 (1974). Accordingly, we reject defendant's contention that the trial court should have exceeded our directive on remand and addressed matters that could have been raised in defendant's prior appeals.

Furthermore, defendant did not present documentary evidence to support his contention that the underlying convictions were inaccurate, constitutionally infirm, or did not comply with *Jaworski* rights. There were no transcripts or affidavits to demonstrate the rights of which defendant was apprised. Rather, defendant's sole offer of proof was that he could not recall if

there was compliance with *Jaworski*.[3]   This "lack of recollection" was insufficient to meet defendant's prima facie burden and, in turn, impose a burden on the prosecutor to demonstrate the underlying convictions by a preponderance of the evidence.  MCL 769.13(6).  Additionally, defendant did not overcome the trial court's reliance on the conviction information submitted by the prosecutor and as delineated in the presentence investigation report.  MCL 769.13(5).

### III.  DEFENDANT'S STANDARD 4 BRIEF[4]

Defendant filed a Standard 4 brief raising 16 issues pertaining to errors that purportedly occurred at his trial or in earlier appeals.  Because these issues do not pertain to the limited remand, we do not address them.  *Jones*, 394 Mich at 435-436; *Pickett*, 391 Mich at 316-317.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Jonathan Tukel

---

[3] In *Jaworski*, our Supreme Court concluded that *Boykin v Alabama*, 395 US 238, 242; 89 S Ct 1709; 23 L Ed 2d 274 (1969), was incorporated into our jurisprudence and required a defendant be advised of certain rights on the record for a valid guilty plea.  Therefore, in Michigan, a record of the guilty plea proceeding must show that the defendant was advised of his right to trial by jury, his right to confront his accusers, and the privilege against self-incrimination.  *Jaworski*, 387 Mich at 24-27, 30-31.  In the present case, defendant did not present prima facie evidence that compliance with *Jaworski* was lacking.

[4] Administrative Order 2004-6, 471 Mich cii.